OPINION OF THE COURT
James Hudson, J.
It is ordered, that plaintiffs’ motion for a default judgment against defendant Augusto Garcia is granted under the circumstances presented (CPLR 3215). It is further ordered that plaintiffs’ motion for summary judgment against defendants Scalzi & Nofi, PLLC and Vincent J. Nofi is granted to the extent provided herein (CPLR 3212). It is further ordered that the court directs that judgment be entered in favor of plaintiffs and against defendants Augusto Garcia, Scalzi & Nofi, PLLC and Vincent J. Nofi on the issue of liability. It is further ordered that the parties are directed to appear before the court on Wednesday, September 30, 2015 at 10:00 a.m. in the forenoon at One Court Street, Riverhead, New York, Part XL, for purposes of a nonjury trial to ascertain the amount of plaintiffs’ lien. It is further ordered, that the motion to preclude brought by defendants is denied as moot.
Plaintiffs, Commissioners of the New York State Insurance Fund (hereinafter referred to as NYSIF or the Fund), make the instant motion (sequence No. 003) for a default judgment against defendant, Augusto Garcia, and for summary judgment against defendants, Scalzi & Nofi, PLLC and Vincent J. Nofi, Esq. The defendants, Scalzi & Nofi, PLLC and Mr. Nofi have moved (sequence No. 004) for an order of preclusion against plaintiffs on the basis of failing to provide discovery. The court will consider both motions in this decision.
The case at bar arises from an incident in which defendant, Augusto Garcia, was injured at his place of employment on April 2, 2006. Mr. Garcia filed a claim with the Workers’ Compensation Board which resulted in a hearing and subsequent award directing the Fund to pay him a lump sum (less monies already paid) of $4,740 as well as continued payments of $300 per week. Additionally, the Board directed payment of $560 to Mr. Garcia’s counsel, the firm of Terry Katz & Associates (plaintiffs’ exhibit A). Plaintiffs have submitted an affidavit from a representative of the NYSIF which indicates that the Fund made payments to Mr. Garcia in the amounts of $120,620 for wages and $38,309.28 for medical/travel expenses, totaling $158,929.28 (aff of Deborah Agudelo, dated Feb. 2, 2015).
*877 Workers’ Compensation Law § 29 (1) allows an injured person to seek compensation for injuries by filing a claim with the Board against an employer, and further allows the injured party to commence a lawsuit seeking an additional recovery from a non-employer. Given this statutory authority, Mr. Garcia also commenced a lawsuit to recover for his injuries against ML Best Construction and All Seasons Commercial Systems, Inc., sounding in negligence and strict liability under Labor Law §§ 200, 240 (1) and 241 (6). Defendant Scalzi & Nofi, PLLC was retained as counsel by Mr. Garcia in this other case and ultimately secured a settlement of his claims in the amount of $425,000. This settlement agreement, dated September 5, 2013 and purporting to be signed by counsel, bears the following language: “Subject to formal approval of Worker’s Compensation Carrier” (plaintiffs’ exhibit C). Thereafter, the NYSIF contends a letter (dated Sept. 12, 2013) was sent to the defendant law firm informing them that although their lien totaled $160,565.09, the Fund would accept $100,000 in full satisfaction thereof (plaintiffs’ exhibit D). Plaintiffs have also submitted proof that a check in the amount of $425,000 was issued to defendants. An examination of this check (plaintiffs’ exhibit E) indicates that it was endorsed by “Augusto Garcia” and “Scalzi and Nofi PLLC.” The cancellation stamps on the back of the check indicate it was negotiated.
Based on these facts, plaintiffs have moved for a default judgment against Mr. Garcia and for summary judgment against the defendant law firm and counsel.
Initially, the court grants plaintiffs’ unopposed motion for a default judgment against defendant Augusto Garcia in an amount to be determined by the court. When a respondent fails to oppose matters advanced on a motion, the facts alleged in the moving papers may be deemed admitted by the court (Kuehne & Nagel v Baiden, 36 NY2d 539 [1975]; Madeline D'Anthony Enters., Inc. v Sokolowsky, 101 AD3d 606 [1st Dept 2012]; Argent Mtge. Co., LLC v Mentesana, 79 AD3d 1079 [2d Dept 2010]).
We turn now to the question of summary judgment as to the remaining defendants. The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (Alvarez v Prospect Hosp., 68 NY2d 320, 324, [1986], citing Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985], Zucker *878 man v City of New York, 49 NY2d 557, 562 [1980], and Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). Upon review of the moving and responding papers, the court finds that, with the exception noted below, plaintiffs have established their entitlement to summary judgment. The gravamen of defendants’ opposition centers on the viability and amount of the lien and the question of an attorney having to personally answer for the enforcement of a lien in a case of this sort. These questions will be discussed ad seriatim.
In addition to allowing an injured employee to proceed against a third-party tortfeasor, Workers’ Compensation Law § 29 (1) contains a provision for the distribution of any award made in a lawsuit, specifically:
“In such case, the state insurance fund, if compensation be payable therefrom, and otherwise the person, association, corporation or insurance carrier liable for the payment of such compensation, as the case may be, shall have a lien on the proceeds of any recovery from such other, whether by judgment, settlement or otherwise, after the deduction of the reasonable and necessary expenditures, including attorney’s fees, incurred in effecting such recovery, to the extent of the total amount of compensation awarded under or provided or estimated by this chapter for such case and the expenses for medical treatment paid or to be paid by it and to such extent such recovery shall be deemed for the benefit of such fund, person, association, corporation or carrier. Should the employee or his dependents secure a recovery from such other, whether by judgment, settlement or otherwise, such employee or dependents may apply on notice to such lienor to the court in which the third party action was instituted, or to a court of competent jurisdiction if no action was instituted, for an order apportioning the reasonable and necessary expenditures, including attorneys’ fees, incurred in effecting such recovery. Such expenditures shall be equitably apportioned by the court between the employee or his dependents and the lienor.”
“[S]ection 29, read in its entirety and in context, clearly reveals a legislative design to provide for reimbursement of the compensation carrier whenever a recovery is obtained in tort for the same injury that was a predicate for the payment of *879 compensation benefits” (Matter of Beth V. v New York State Off. of Children & Family Servs., 22 NY3d 80, 91 [2013] [emphasis omitted], quoting Matter of Petterson v Daystrom Corp., 17 NY2d 32 [1966]). Indeed, the lien of a carrier under these circumstances has been deemed “inviolable” (Matter of Granger v Urda, 44 NY2d 91 [1978]). Defendants’ argument that contests the existence of the “lien,” therefore, is completely chimerical. Plaintiffs will be afforded summary relief on this issue.
In support of the principle that an attorney may be personally liable for a section 29 lien plaintiffs’ counsel cites to the holdings in Commissioners of State Ins. Fund v McCarthy (36 Misc 2d 956 [Sup Ct, NY County 1962]) and Commissioners of State Ins. Fund v Parrilla (31 Misc 2d 835 [NY City Mun Ct 1961]).
Defense counsel acknowledges this case law but points out that the decisions invoked by plaintiffs are over 50 years old and are not from an appellate court. In response to this the court must refer counsel to the timeless observation of the venerable Trebonius “dormiunt aliquando leges, nunquam moriuntur.”[1]
In addition to the two aforementioned cases, the holdings in Commissioners of State Ins. Fund v Crown (65 Misc 2d 593 [App Term, 1st Dept 1970]); Matter of Neilson Realty Corp. v Motor Veh. Acc. Indem. Corp. (47 Misc 2d 260 [Sup Ct, Queens County 1965]); Utica Mut. Ins. Co. v Employers Mut. Liab. Inc. Co. of Wis. (57 Misc 2d 764 [Utica City Ct 1968]); and Aiello v Levine (44 Misc 2d 1067 [Nassau Dist Ct 1965]) are all applicable to the case before us and argue in favor of the plaintiffs’ cause. In studying the well reasoned opinions of our recent judicial forbears, the court recalls Lord Coke’s sage admonition “via trita est tutissima.”[2] Of course, this alone does not end our inquiry or determine the court’s result. If these decisions were illogical or had been superceded by public policy, we would discard them in spite of a dearth of contrary case law. In following the holdings in these cases, however, the court is moved by their logic as well as their consistency. Perhaps that *880 is why the defense can offer no opposing case law in the intervening half century. The holdings in McCarthy, Parrilla, Crown, etc., provide eloquent persuasive authority to guide us in making the somber decision as to whether an attorney can be personally liable for disposing of the proceeds of a lawsuit. They lead us to an inescapable conclusion, namely that an attorney who proceeds to dispense settlement funds after having been placed on notice of a section 29 (1) lien, is personally liable for the satisfaction of the lien.
It is disquieting for the court to impose personal liability upon an attorney who may have been merely carrying out the express direction of a client (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.2). The attorney-client relationship, however, does not act as an absolute liability shield. It is beyond cavil that attorneys can be held personally liable under circumstances such as obtaining services on behalf of a client in the absence of a specific disclaimer (Tannenbaum Helpern Syracuse & Hirschtritt LLP v DeHeng Law Offs., 127 AD3d 564 [1st Dept 2015]; see Elisa Dreier Reporting Corp. v Global NAPs Networks, Inc., 84 AD3d 122 [2d Dept 2011]) or for fees to a sheriff for execution of process (McCloskey v Bril, 286 App Div 143 [1st Dept 1955], affd 1 NY2d 755 [1956]). The holding of the court in this matter is a consistent application of the same guiding principles present in the aforementioned case law.
We now turn to defendants’ argument that summary judgment is precluded on the basis of the specific amount of plaintiffs’ lien not being satisfactorily established.
In his opposition papers, defense counsel states “a genuine issue of fact exists as to the amount, if any, of Plaintiffs’ asserted lien,’ once claimant is credited with his pro rata share of litigation costs, including attorney’s fees, associated with the extinguishment of Plaintiffs’ obligation to pay future ii.e., post-settlement) worker’s compensation benefits” (affirmation of defense counsel, dated Mar. 13, 2015, para 14).
The application of section 29 (1) obliges us to parse this statement, and separate its gold from the dross. This portion of the statute clearly contemplates that any question as to the amount or propriety of the attorney’s lien should be addressed to the court where the third-party action was commenced and settled (Mayerhofer v Turner Constr. Co., 29 AD3d 320 [1st Dept 2006]; Castleberry v Hudson Val. Asphalt Corp., 70 AD2d 228 [2d Dept 1979]). As to the value of future benefits, the court must follow the ruling in Matter of Kelly v State Ins. *881 Fund (60 NY2d 131 [1983]) (cited by defense counsel), where the learned Court stated “the value of future compensation payments that a carrier has been relieved of paying due to a third-party recovery is not so speculative that it would be improper to estimate and to assess litigation costs against this benefit to the carrier.” {Id. at 139.) This factual issue must be resolved by the trier of fact.
This holding does not disturb the court’s finding that plaintiffs are entitled to summary judgment against defendants on the issue of liability and as to the propriety of the lien with the sole issue being that noted pursuant to the rule in Kelly. To hold otherwise would serve to reward defendants for failing to follow the statutory requirement that mandates the carrier’s lien be resolved by the court that settled Mr. Garcia’s personal injury case. To state it plainly, such practice should be discouraged. By the same token, however, the legislative purpose behind section 29 is to equitably apportion responsibility to insure “that a compensation carrier assumes its fair share of the costs of litigation” (Martin v Agway Petroleum Corp., 161 AD2d 1129, 1131 [4th Dept 1990], citing Kelly v State Ins. Fund). To that end, the court is mindful of its obligation to sit in equity when compelled by necessity to prevent unjust enrichment (UETA Latinamerica, Inc. v Zafir, 129 AD3d 704 [2d Dept 2015]). We must also note that although plaintiffs have clearly established their right to a lien and to have it satisfied from the settlement proceeds, there is no indication that the defendants agreed to the specific amount of $100,000.
The sole remaining issue (the value of future benefits) bears exclusively on the measure of damages that plaintiffs are entitled to receive. Accordingly, the matter will be set down for an immediate trial on the issue of damages before the court pursuant to CPLR 3212 (c) (Torres v American Bldg. Maintenance Co. of NY, 51 AD3d 905 [2d Dept 2008]). Defendants have persuaded the court that the amount of the lien is now in dispute. This argument “cuts both ways.” The sum ultimately awarded by the court may be zero. Conversely, we remind the parties that in their original communication to the defendants, plaintiffs indicated that the original amount of the lien was in the amount of $160,565.09. Since the court will be deciding the question of an equitable appraisal of the lien, plaintiffs are not held to seeking a sum which represented an offer of settlement but instead may amend their pleadings accordingly (CPLR 3025 [b]; Nechifor v RH Atl.-Pac. LLC, 92 AD3d 514 [1st Dept 2012]).
*882 Defendants contend that they require further discovery on this issue. We disagree. “The mere hope or speculation that evidence sufficient to defeat a motion for summary judgment may be uncovered during the discovery process is an insufficient basis for denying the motion” (Kimyagarov v Nixon Taxi Corp., 45 AD3d 736, 737 [2d Dept 2007], citing Arbizu v REM Transp., Inc., 20 AD3d 375 [2d Dept 2005], Kershis v City of New York, 303 AD2d 643 [2d Dept 2003], and Associates Commercial Corp. v Nationwide Mut. Ins. Co., 298 AD2d 537 [2d Dept 2002]).
We have considered defendants’ remaining contentions and although they have been advanced with commendable vigor, they fail to persuade the court.
Therefore, plaintiffs’ motions will be granted to the extent provided herein. Defendants’ motion to preclude is denied as moot.

. “The laws sometimes sleep but they never die” (2 Edward Coke, Institutes of the Laws of England at 161 [1797]).

. The trodden path is the safest (Isle of Ely Case, 10 Co Rep 141a, 142a, 77 Eng Rep 1139, 1141 [1609]). (The court wishes to note that the addition of these Latin maxims are included for historical reference and not as controlling authority in and of themselves.)